JON Y. VANDERPOOL, ESQ. (SBN 161611)
SMITH STEINER VANDERPOOL, APC
401 West A Street, Suite 340
San Diego, CA 92101
Telephone: (619) 756-7007
Fax: (619) 501-8194

Attorneys for Plaintiff
RICHARD VANGIESON

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD VANGIESON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MARK ESPER, in his official capacity as the SECRETARY OF DEFENSE; the DEFENSE CONTRACT AUDIT AGENCY; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. '20CV1033 BEN LL<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>(1) Discrimination<br>(2) Retaliatory Termination<br><br>**DEMAND FOR JURY TRIAL** |

**PARTIES & CLAIMS OVERVIEW**

1. Plaintiff RICHARD VANGIESON ("VanGieson") resides in San Diego County and is a decorated United States Navy veteran with some 22 years of service, including: a Division Leader on the USS Jarrett, a sonar Instructor at Point Loma, and sonar technician at the Undersea Warfighting Development Center. VanGieson was hired by the Department of Defense Contract Audit Agency (DCAA) in April 2012, and thereafter dutifully and competently performed full-time services for that agency, receiving "fully successful" performance evaluations for six successive years. In the fall

of 2017, he was hospitalized for a diagnosed medical condition. Upon returning to work in the spring of 2018, he was assigned a new supervisor to whom he disclosed his condition along with his aim to minimize circumstances that exacerbated it. Over the succeeding year, VanGieson was subjected to repeated disparate, discriminatory, and pretextual treatment by his supervisors and suffered various adverse actions substantially motivated by his protected classification. Closely following his communicating good faith protests both to the DCAA's EEO representative and his DCAA Regional Audit Manager of the discrimination and adverse actions, he was subjected to additional adverse actions, culminating in termination for pretextual reasons.

2. Defendant MARK ESPER, the United States Secretary of Defense, is named in his capacity as the highest-ranking official overseeing the DEFENSE CONTRACT AUDIT AGENCY, an "employer" as defined by 42 USC § 2000e(b).

**VENUE**

3. Because the acts giving rise to VanGieson's claims arose in San Diego County, this judicial District is the proper venue under 28 U.S.C. § 1391(b)(1)-(3).

**JURISDICTION**

4. VanGieson's claims arise from Defendants' violations of Federal civil rights laws, including 29 U.S.C. § 791 et seq., prohibiting disability discrimination and 42 U.S.C. § 2000e-3, prohibiting retaliation for protesting discrimination.

5. Prior to filing this action, VanGieson timely initiated, cooperated with the investigations of, and exhausted his administrative remedies, filing a DCAA internal complaint alleging discrimination, harassment and retaliation. After filing a supplemental complaint on or about June 26, 2019, the DCAA separated it into two complaints, DCAA-CASE-W19-005 and DCAA-CASE-W19-010. Both processed to final decisions consistent with 29 C.F.R. §1614.302(d)(2).

6. This Court has original jurisdiction to hear and adjudicate this case under 29 C.F.R. § 1614.310(g) and/or 28 U.S.C. § 1331.

///

## FACTS AND EVENTS

7. Following his honorable discharge from full-time U.S. Navy service in or about 2008, VanGieson obtained professional tax, accounting, and auditing experience in various private sector positions in San Diego.

8. Plaintiff eventually applied to and was hired by the DCAA into a GS-12 position in April 2012, where he was responsible for: auditing defense contractor's accounting systems for FAR regulatory compliance, government cost accounting system design, and implementation; performing audits in accordance with Generally Accepted Government Auditing Standards (GAGAS); providing financial and accounting advisory services for the Department of Defense in connection with negotiation, administration, and settlement of contracts and subcontracts; reconciling financial records and performing financial analysis of contractor year end records to verify accuracy; and issuing audit reports to DCMA procurement officers to assist in the procurement process.

9. From inception of his DCAA employment through August 2017, VanGieson effectively and competently performed his various responsibilities. His direct supervisors commended him through "fully successful" performance evaluations over six successive years, and never placed on a performance improvement plan.

10. From September 2017 through March 2018, plaintiff was hospitalized for a medical condition.

11. Upon returning to his DCAA employment in April 2018, VanGieson was assigned a new supervisor, Lisa Gift, with whom he conferred to summarize his medical condition and treatment for it, so as to avoid or mitigate circumstances that could exacerbate his condition. Despite this information, the DCAA did not request, invite nor commence an interactive process to confer about reasonable accommodations.

12. In September 2018, Plaintiff received written criticisms alleging deficiencies for minor administrative issues. The trivial nature of the allegations departed from DCAA protocols and historical precedents, suggesting his supervisor was subjecting Plaintiff to disparate, pretextual treatment.

13. In October 2018, during a weekly progress meeting, after having been given contradictory guidance from his supervisor about involving her too often in his assignments and not enough, Plaintiff reminded his supervisor of his medical condition, that some of her interactions were exacerbating his condition, and he pledged to endeavor to comply with her stated expectations.

14. On December 17, 2018, VanGieson was given a Performance Improvement Plan, identifying areas of concern and the need to improve in certain areas.

15. In late-February 2019, Plaintiff completed the only major assignment he had been given ahead of schedule, in advance of a pre-scheduled leave to get married.

16. Upon returning in March 2019 from a short-honeymoon, beyond a weekly meeting recapping his assignments, Plaintiff's supervisor did not comment upon Plaintiff's performance on the assignment he completed before departing, nor did she comment about his progress on the December 2018 Performance Improvement Plan.

17. On April 2, 2019, VanGieson is called into his supervisor's office to close out the Performance Improvement Plan and simultaneously sign his annual performance appraisal. Ahead of that meeting, his supervisor requested VanGieson's input by close of business April 1, which he complied with timely.

18. None of Plaintiff's input was referenced in his performance appraisal, and his supervisors closed out the Performance Improvement plan in just three months without discussing the one major assignment he completed ahead of schedule. His supervisor concluded his performance had not improved over the course of three months, denied him a grade pay increase, and said she was recommending him for termination despite the fact she had neither afforded nor directed him to attend any training, and failed to initiate an interactive process to determine whether the purported deficiencies were a result of his disability and could be remedied through reasonable accommodations.

19. On April 17, 2019, VanGieson called DCAA's EEO representative Rachel Taylor, protesting his supervisor's discriminating against him based upon the medical condition he had disclosed to her. No investigation was initiated.

20. On April 23, 2019, VanGieson is called to a meeting with his supervisor and DCAA Branch Manager Donica Ryder. The Branch Manager told Plaintiff she concurred with his supervisor's assessment and supported removal from service. That night, Plaintiff's supervisor texted Plaintiff directing him not to return to the office.

21. On May 2, 2019, VanGieson met with DCAA's Regional Audit Manager Patricia Lee, detailing his medical condition, prior hospitalization, his disclosing his condition to his supervisor, his performance being criticized for trivial reasons inconsistent with DCAA practices which had exacerbated his condition, and the events that followed. The Audit Manager indicated these circumstances would be considered.

22. Following this report, DCAA did not commence an investigation as to Plaintiff's reports of discrimination, adverse actions and their nexus.

23. On May 31, 2019, VanGieson was directed to meet with Branch Manager Ryder and Regional Audit Manager Lee. Without explanation, DCAA's audit manager concurred with the decision to terminate his service.

## First Cause of Action

### Discrimination [29 U.S.C. § 791 et seq]

24. Plaintiff incorporates paragraphs 1 through 23 by reference, as if fully set forth herein.

25. Section 501 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), as amended, 29 U.S.C. § 791 et seq., prohibits employment discrimination against otherwise qualified federal employees on the basis of a disability. The standards for determining a violation of the Rehabilitation Act, as amended in 1992, are the same as those for a violation of the Americans with Disabilities Act (ADA). 42 U.S.C. § 794(d) and 42 U.S.C. § 12101, et seq.

26. At all times relevant, Plaintiff was diagnosed with, treated and hospitalized for a medical condition and/or disability and thereby within a protected classification that was disclosed to his employer in or before April 2018.

27. At all times relevant, Plaintiff was capable of and fulfilled the essential functions of his job satisfactorily or better, and contrary to the agency's own policies and procedures, his employer did not initiate an interactive process to discuss any reasonably appropriate workplace accommodations.

28. After disclosing his medical condition to his supervisor, Plaintiff was subjected to materially adverse actions motivated by his protected classification, evidenced in part by disparate treatment undertaken in a pretextual manner to conceal discriminatory motivations.

29. Defendants' discriminatory conduct caused VanGieson to suffer, and he continues to suffer, past and future economic losses, lost earning capacity, job relocation, impaired future employment and advancement opportunities. Plaintiff has also suffered non-pecuniary harms, including harm to his professional reputation (he must disclose his separation for alleged performance reasons to prospective employers), emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

**Second Cause of Action**

**Retaliation [42 U.S.C. § 2000e-3]**

30. Plaintiff incorporates herein by reference paragraphs 1 through 29, as if fully set forth herein.

31. Title VII of the Civil Rights Act of 1964; the Age Discrimination in Employment Act; the Americans with Disabilities Act; and the Equal Pay Act, prohibit reprisal or retaliation by an agency because an individual has engaged in protected activity. Section 704(a) of Title VII makes it an unlawful employment practice to discriminate against an individual because s/he has "opposed any practice made an unlawful employment practice [as described in Section 703], or because s/he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or

hearing....” 42 U.S.C § 2000e-3(a). See also 29 C.F.R. §1614.101(b)(prohibiting “retaliation for opposing any practice made unlawful by Title VII...or for participating in any stage of administrative... proceedings”).

32. Plaintiff promptly protested in good faith to multiple DCAA managers and EEO representatives discriminatory treatment and imposed adverse actions. Despite receiving such protests, DCAA officials did not initiate an investigation of Plaintiff’s protests and/or take reasonable remedial actions to halt the alleged discrimination or prevent reprisals against Plaintiff for making such protests.

33. Shortly after Plaintiff communicated good faith protests, he was subjected to further adverse action, culminating in termination.

34. The timing, persons involved, and other circumstances evidence that Defendants’ terminating Plaintiff was motivated by his having made good faith protests of discriminatory and disparate treatment.

35. Defendants’ retaliatory conduct caused VanGieson to suffer, and he continues to suffer, past and future economic losses, lost earning capacity, job relocation, impaired future employment and advancement opportunities. Plaintiff has also suffered non-pecuniary harms, including harm to his professional reputation (he must disclose his separation for alleged performance reasons to prospective employers), emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests a jury trial and entry of judgment against Defendants as follows:

1. For past and future lost earnings, according to proof;

2. For damages to plaintiff’s professional reputation;

3. For compensatory damages, including emotional pain and suffering, mental anguish, and loss of enjoyment;

4. For injunctive and declaratory relief;

5. For attorney fees and costs;

6. For prejudgment interest on all amounts claimed; and

7. For any other and further relief that the Court considers proper.

Dated: June 5, 2020

SMITH STEINER VANDERPOOL, APC

By: /s Jon Vanderpool

Jon Y. Vanderpool
Email: jvanderpool@ssvwlaw.com
Attorneys for Plaintiff