UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD VANGIESON, an individual,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>LLOYD J. AUSTIN, in his official capacity as the SECRETARY OF DEFENSE,<br><br>　　　　　　　　Defendant. | Case No.: 3:20-cv-01033-LAB-LL<br><br>**ORDER DENYING DEFENDANT'S MOTION TO COMPEL RULE 35 MENTAL HEALTH EXAMINATION**<br><br>**[ECF No. 21]** |

Currently before the Court is Defendant's May 18, 2021 Motion to Compel a Rule 35 Mental Health Examination of Plaintiff [ECF No. 21 ("MTC")], and Plaintiff's May 24, 2021 Opposition [ECF No. 23 ("Oppo.")]. For the reasons set forth below, Defendant's motion is **DENIED**.

**I.　RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Richard VanGieson is a former employee of the Department of Defense Contract Audit Agency ("DCAA") hired in April 2012. ECF No. 7, ¶ 1. Defendant is

///
///
///

Lloyd J. Austin acting in his official capacity as the Secretary of Defense.[1] Id. at 2; see also id. at 21. The operative complaint is a First Amended Complaint (hereinafter "FAC") filed by Plaintiff on September 29, 2020. ECF No. 7 ("FAC"). In the FAC, Plaintiff asserts causes of action for discrimination and retaliatory termination in connection with his termination from his employment at the DCAA. FAC ¶¶ 24-35.

Plaintiff alleges that he received "fully successful" performance evaluations for six successive years during his employment with the DCAA. FAC ¶ 9. Plaintiff further alleges that from September 2017 through March 2018, he was hospitalized for a "medical condition." Id. ¶ 10. Plaintiff further alleges in the FAC that upon his return to work in April 2018, he informed his new supervisor, Lisa Gift, of his "medical condition and treatment." Id. ¶ 11. Plaintiff claims that after informing his supervisor of his condition, he received "written criticisms alleging deficiencies from his supervisor for minor administrative issues" which Plaintiff alleges was "singling Plaintiff out for criticism and discipline, subjecting him to disparate, pretextual treatment." Id. ¶ 12.

As a result of the criticisms, Plaintiff alleges he was given a Performance Improvement Plan on December 17, 2018. Id. ¶ 14. In the following months, Plaintiff claims that his supervisors did not discuss his progress with him and did not recommend any training. Id. ¶¶ 16-18. Plaintiff also alleges that DCAA failed to initiate any conversation about providing accommodations for his medical condition or determining whether his medical condition contributed to his allegedly deficient work performance. Id. ¶ 18.

On April 23, 2019, Plaintiff alleges that he was called into a meeting with his supervisor and DCAA Branch Manager in which he was informed that he was being

---

[1] The Court **DIRECTS THE CLERK OF COURT** to modify the docket to reflect "Lloyd J. Austin, in his official capacity as the Acting Secretary of Defense" as Defendant in place of "Christopher C. Miller, in his official capacity as the Acting Secretary of Defense." Federal Rule of Civil Procedure 25(d).

terminated. Id. ¶ 20. Plaintiff disputed the termination on the basis that his supervisor was discriminating against him because of the medical condition that he had disclosed to her. Id. ¶ 21. Plaintiff alleges that the DCAA did not initiate an investigation into the potential discrimination. Id. ¶ 22. As a result of Defendant's actions, Plaintiff claims that he experienced economic and career losses in addition to "emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life." Id. ¶ 35. He seeks past and future lost earnings and monetary damages for "emotional pain and suffering, mental anguish, and loss of enjoyment." Id. at 7-8.

On October 13, 2020, Defendant filed an Answer to the FAC. ECF No. 8. On November 19, 2020, the undersigned Magistrate Judge held an early neutral evaluation conference and case management conference. ECF No. 9. On February 19, 2021, Plaintiff served responses to Defendant's First Set of Interrogatories. See Exhibit 1 to the Torres Declaration ("Torres Decl.") filed in support of Defendant's MTC. Additionally, on May 13 and 14, 2021, Plaintiff was deposed in connection with this action. See Torres Decl. ¶ 3; see also Vanderpool Declaration ("Vanderpool Decl.") filed in support of Plaintiff's Oppo. ¶¶ 3-4.

On May 10, 2021, the parties jointly contacted the Court regarding a discovery dispute brought by Defendant concerning Plaintiff's objections to Defendant's request for a Rule 35 Mental Health Examination of Plaintiff. ECF No. 18. After the informal telephonic discovery conference, the Court issued a briefing schedule. Id. The parties timely filed their pleadings in accordance with the briefing schedule. See MTC and Oppo.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 35(a) authorizes a court to "order a party whose mental condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). However, the order "may be made only on motion for good cause." Fed. R. Civ. P. 35(a)(2)(A). These requirements necessitate an affirmative showing by the movant that: (1) the plaintiff has placed her mental condition in controversy; and (2) good cause exists for the examination. See, e.g.,

Schlagenhauf v. Holder, 379 U.S. 104, 116-17 (1964); Turner v. Imperial Stores, 161 F.R.D. 89, 92 (S.D. Cal. 1995).

Although Rule 35 "is to be construed liberally in favor of granting discovery," a claim for damages for emotional distress, without more, is not sufficient to put mental condition "in controversy." Turner, 161 F.R.D. at 96-97. "Garden variety" emotional distress claims do not place a party's mental state in controversy. Id. at 97. Courts have determined that the "in controversy" requirement is met and a plaintiff should undergo a mental examination where:

> the case[] involve[s], in addition to a claim of emotional distress, one or more of the following: 1) a cause of action for intentional or negligent infliction of emotional distress; 2) an allegation of a specific mental or psychiatric injury or disorder; 3) a claim of unusually severe emotional distress; 4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or 5) plaintiff's concession that his or her mental condition is "in controversy" within the meaning of Rule 35(a).

Id. at 95.

Additionally, compelling a medical examination must be "for good cause." Id. Factors that courts have considered in assessing whether "good cause" exists, include, but are not limited to, "the possibility of obtaining desired information by other means, whether plaintiff plans to prove her claim through testimony of expert witnesses, whether the desired materials are relevant, and whether plaintiff is claiming ongoing emotional distress.'" Conforto v. Mabus, No. 12cv1316–W (BLM), 2014 WL 3407053, at *3 (S.D. Cal. July 10, 2014) (quoting Juarez v. Autozone Stores, Inc., No. 08cv417–L (BLM), 2011 WL 1532070, *1 (S.D. Cal. Apr. 21, 2011)). Ultimately, each motion to compel a mental examination must be decided on a case-by-case basis, considering all the relevant circumstances." Schlagenhauf, 379 U.S. at 121-22.

/ / /
/ / /
/ / /
/ / /

## III. DISCUSSION

### A. Summary of Parties' Arguments

Defendant argues that "Plaintiff's disability discrimination claim directly places his mental condition at issue and discovery to date, including his own testimony, confirms he is alleging more than 'garden variety' emotional distress." MTC at 3. Specifically, Defendant argues that Plaintiff's anxiety disorder is key to liability in this case. Id. Defendant states that in order to establish a prima facie case for disability discrimination under the Rehabilitation Act, Plaintiff must show that he was "1) an individual with a 'disability,' 2) otherwise qualified, meaning he was able to perform the essential functions of the job, with or without reasonable accommodations, and 3) he was subjected to discrimination solely by reason of his disability." Id. (internal citations omitted). Defendant further argues that Plaintiff characterizes his "disability" as an "Anxiety Disorder" which Plaintiff alleges manifests "in shortness of breath, racing heart rate, intrusive thoughts, inability to function." Id. (citing Exhibit 1 to the Torres Decl., Plaintiff's Response to Interrogatory No. 7 at 11). Defendant states that Plaintiff repeatedly testified during his deposition that the "alleged conduct of the supervisor at issue, Lisa Gift, 'exacerbated' his anxiety, and at one point described it as 'extreme anxiety.'" Id. at 3 (citing Torres Decl. ¶ 3). In sum, Defendant argues that "[th]ese claims and allegations not only put his anxiety disorder squarely at issue, but also raise a question of whether Plaintiff was able to perform the essential functions of his job." Id.

Defendant also argues that Plaintiff has placed his mental health in controversy by seeking damages for emotional distress. Id. at 4. Defendant states that the allegations in Plaintiff's complaint, his interrogatory responses that his termination caused him "significant stress, anxiety, frustration, sadness, and disenchantment," and his deposition testimony all support that he has put his mental health condition in controversy. Id. at 4-5.

Finally, Defendant argues that good cause exists to support a Rule 35 mental health examination because the examination is "relevant to both the disability discrimination claim and demand for emotional distress damages." Id. at 5. Defendant argues that the

examination "will help Defendant determine whether Plaintiff was qualified," but also "whether the alleged emotional distress is attributable to Defendant's alleged wrongful conduct of Plaintiff's other life circumstances or his pre-existing condition." Id. (internal citation omitted). Defendant argues that the information it seeks to obtain from the examination cannot be obtained elsewhere, noting that "a professional examination of Plaintiff allows for a taking of a careful and detailed history of his symptoms, past stressors and treatment, to determine the extent of the alleged injury, and whether other factors may have contributed to or exacerbated them." Id. at 6 (internal citation omitted). Defendant states that "Plaintiff testified about other significant stressors, including a dysfunctional relationship with his mother." Id. Defendant further states that Plaintiff "has suggested he would rely on expert witness testimony at least for rebuttal purposes." Id.

Plaintiff argues that Defendant's motion should be denied because:

> [Plaintiff's] [s]ix years of 'fully successful' performance appraisals, medical notes provided to DCAA clearing him to return to work in April 2018 without functional limitations, and his current employment in an equivalent position with the Navy all confirm Mr. VanGieson had and has the physical and mental capacity to perform essential job duties. Even if Defendant had some plausible basis to contest this element, there is no good cause to order an examination. Mr. VanGieson's current mental health reveals nothing about whether he was capable of performing his essential job functions between April 2018 and May 2019.

Oppo. at 2. Plaintiff further argues that "Mr. VanGieson's allegations of 'garden variety' emotional distress damages do not place his psychological health 'in controversy.'" Id. (citing Turner, 161 F.R.D. at 93). Rather, Plaintiff argues that "the distress damages sought by Mr. VanGieson arise from the discrimination and retaliation he experienced in 2018 and 2019, not for some lasting or ongoing psychological damage." Id. (citing FAC ¶ 29). Plaintiff states that "[a]lthough Mr. VanGieson continued seeking treatment for his anxiety disorder after DCAA fired him, he does not allege the termination caused his anxiety disorder or compelled him to seek treatment for it." Id. at 5-6. Plaintiff further states that "[t]he cognitive behavioral therapy he received in late 2019 through 2020 was simply a

continuation of the therapy he'd been doing since 2015." Id. at 6 (citing Exhibit 1 to the Torres Decl., Plaintiff's Response to Interrogatory No. 8 at 13).

Finally, Plaintiff argues that there is no good cause for the mental health examination because "Mr. VanGieson's current mental condition has no probative value regarding his capacity to perform essential job functions, or the emotional distress he experienced, in 2018 and 2019." Id. at 6. Plaintiff further states that "through other discovery methods, Defendant has already obtained the same and/or better information regarding Mr. VanGieson's mental health." Id.

### B. Whether Plaintiff's Mental Condition is "In Controversy"

Here, the Court finds that Plaintiff's mental condition is in controversy. To determine if Plaintiff's mental condition is in controversy, the Court must evaluate the five Turner factors set forth above. Under the first factor, Plaintiff has not alleged a cause of action for intentional or negligent infliction of emotional distress. See FAC.

Under the second factor, Plaintiff identified his "disability" as an "Anxiety Disorder [which] manifested in shortness of breath, racing heart rate, intrusive thoughts, inability to function." Exhibit 1 to the Torres Decl., Plaintiff's Response to Interrogatory No. 7 at 11. Plaintiff also provided in discovery that his "Anxiety Disorder first manifested itself in early 2016." Id. Plaintiff further states that through his own efforts after DCAA terminated his employment, including "traditional and Cognitive Behavioral Therapy, counseling, and modification of [his] own regimen, these symptoms began to subside in Fall of 2020." Id. Plaintiff's discovery responses further provide that his supervisor, Ms. Gift, "exacerbat[ed] [his] medical condition and impact[ed] [his] job performance." Exhibit 1 to the Torres Decl., Plaintiff's Response to Interrogatory No. 13 at 17.

Under the third factor, whether Plaintiff has a claim of unusually severe emotional distress, the Court notes that Plaintiff states that he did not suffer "emotional distress to the point of requiring medical intervention or psychiatric treatment," but "the degrading experience of being discarded simply because [he] suffered from a disability caused [him] significant stress, anxiety, frustration, sadness, and disenchantment." Id., Plaintiff's

Response to Interrogatory No. 15 at 20. However, Plaintiff later stated that he did seek additional treatment for his emotional injuries, noting "that [he] didn't leave the house for almost a month after [his] separation and that [he] increased the frequency of [his] visits with [his] therapist to try and cope with the feelings and fears in productive ways." Id., Plaintiff's Response to Interrogatory No. 17 at 21. The Court finds Plaintiff's argument that his emotional distress can be best characterized as "garden variety" is unpersuasive. "Garden variety [claims are] claims of generalized insult, hurt feelings, and lingering resentment [that] do not involve a significant disruption of the plaintiff's work life and rarely involve more than temporary disruption to the claimant's personal life." Ortiz v. Potter, 2010 WL 796960 at *3 (E.D. Cal. March 5, 2010). Here, Plaintiff concedes that Ms. Gift exacerbated his anxiety disorder and may have contributed to him not leaving the house for almost a month, which the Court finds rises above "garden-variety" emotional distress.

Under the fourth factor, Defendant contends that "during the meet and confer process, Plaintiff suggested he would rely on expert witness testimony at least for rebuttal purposes." MTC at 6. Plaintiff's Opposition is silent on the issue of expert testimony. See Oppo. Accordingly, this factor weighs in favor of Defendant.

Finally, as to the fifth factor, Plaintiff does not concede that his mental condition is in controversy as illustrated by the arguments made in his Opposition. See Oppo. In sum, the Court finds that based on the five factors set forth in Turner, Defendant has met his burden to demonstrate that Plaintiff's mental health is in controversy for purposes of Rule 35. Next, the Court must consider whether good cause exists to compel a Rule 35 examination.

### C. Whether Defendant has Shown Good Cause for Compelling a Mental Examination

Defendant asserts that he has shown good cause for the Court to order a psychological examination with four arguments. MTC at 5. First, Defendant maintains that he needs the examination to evaluate what extent of Plaintiff's emotional distress damages

are attributable to Defendant's conduct versus other outside stressors. Id. at 6. Second, Defendant argues the information obtained from an examination cannot be obtained elsewhere because "[a]vailable medical records are not a substitute for an examination." Id. Third, Defendant argues that "Plaintiff has not committed to forgoing expert testimony altogether in support of his claims." Id. And fourth, Defendant contends that he lacks Plaintiff's medical records from 2020. Id.

The Court finds that Defendant's arguments fail. First, Defendant can obtain the desired information by other means; namely, Plaintiff's medical records. Plaintiff produced voluminous medical records regarding his past mental state. See Oppo. at 6 ("Plaintiff produced over 305 pages of medical records from three separate health-care providers, including full psychological and medical histories, treatment plans, and progress notes from his therapist that describe [Plaintiff's] contemporaneous mental state, symptoms, triggers, and potential causes of his anxiety disorder"); see also Vanderpool Decl. ¶¶ 2, 7, 8. Furthermore, Defendant has deposed Plaintiff in a two-day deposition and has also deposed Plaintiff's wife. Oppo. at 6. As such, Defendant has had an opportunity to inquire about the extent of Plaintiff's disability and emotional distress.

The Court also finds a Rule 35 mental health examination would not be relevant to Plaintiff's anxiety disorder which subsided in fall 2020. Exhibit 1 to the Torres Decl., Plaintiff's Response to Interrogatory No. 7 at 13. A mental health examination at this procedural posture will only provide insight into Plaintiff's current mental health and allow for discussion of Plaintiff's past medical history including his anxiety disorder from 2018 through 2019. Notably, Plaintiff is not claiming ongoing emotional distress. Id. Considering that Plaintiff has already produced extensive medical records from the relevant time period, the Court finds that a current mental examination would not be relevant to Plaintiff's level of emotional distress from three years ago. See Mahil v. Option Care Enterprises, Inc., No. 20CV1559-BEN-MDD, 2021 WL 1428496, at *3 (S.D. Cal. Apr. 15, 2021) ("The Court also finds that an IME would not be relevant to Plaintiff's past emotional distress claims as the IME will focus on Plaintiff's current mental state and only

discuss Plaintiff's past medical history."). The Court finds the possibility that Plaintiff may rely on a rebuttal expert to support his emotional distress claims insufficient to compel a Rule 35 mental health examination. In light of these considerations, the Court finds that Defendant has not demonstrated "good cause" to compel a Rule 35 mental health examination.

## IV. CONCLUSION

For the foregoing reasons, the Court **ORDERS** Defendant's Motion be **DENIED**.

**IT IS SO ORDERED.**

Dated: June 4, 2021

Honorable Linda Lopez
United States Magistrate Judge